UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANA CARRASQUILLO, *on behalf of herself, FLSA Collective Plaintiffs, and the Class,*<br><br>*Plaintiff,*<br><br>-against-<br><br>WESTECH SECURITY AND INVESTIGATION INC.,<br><br>*Defendant.* | Civil Action Case No. 1:23-cv-4931-MKV<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFANDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6) AND TO STRIKE THE CLASS ALLEGATIONS OF THE AMENDED COMPLAINT PURSUANT TO RULE 23**

**CERVINI LAW GROUP PLLC**
Joseph P. Cervini, Jr.
475 Park Avenue South, 18th Floor
New York, New York 10016
Tel. 917-304-9231
jcervini@cervinilawgroup.com
*Counsel for Defendant*
*Westech Security and Investigation Inc.*

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT**……………………………………………………….……1

**LEGAL ARGUMENT**……..……………………………………………………………….3

**POINT 1.**     **The Documentary Evidence is Admissible**………………………………….3

        **A.  The Documents Demonstrate That
           Plaintiff's Allegations Are Implausible**………….……………………..4

**POINT 2.**     **Plaintiff's Allegations are Contradictory**……………………..………………5

**POINT 3.**     **Security Guards Do Not Qualify as Manual Workers**………….……………6

**POINT 4.**     **The Motion to Strike is Not Premature**……………………..……………….7

**POINT 5.**     **The Court Should Decline to Exercise Supplemental Jurisdiction**….………9

**POINT 6.**     **Plaintiff's Misplaced Technical Argument**………………………………...10

**CONCLUSION** ………………………………………………………………….……….10

# **TABLE OF AUTHORITIES**

**Cases**

*Borgese v. Baby Brezza Enter. LLC*
    No. 20-civ-1180(VM) 21 US Dist. LEXIS 30216
    (S.D.N.Y. Feb. 18, 2021) …………………………………………………………….7

*Brooklyn Heights Ass'n v. Nat'l Park Serv.*
    818 F. Supp. 2d 564, 571 (E.D.N. Y. 2011)……………………………………..……...9

*Fridman v. GCS Computs. LLC ("GCS")*
    2019 WL 1017534 (S.D.N.Y. Mar. 4, 2019) …………………………………..……….2,4

*Hernandez v. Mauzone Home Kosher Prods. of Queens, Inc.*
    No. 12 Civ. 2327 (SJ) (JMA), 2013 U.S. Dist. LEXIS
    142425 (E.D.N.Y. Sept. 30, 2013)……………………………………………………..10

*Johnson v. Levy*
    812 F. Supp. 2d 167 (E.D.N.Y. 2011) …………………………………………………..3

*Krawitz v. Five Below, Inc.*
    2023 U.S. Dist. LEXIS 175800 (S.D.N.Y. 2023) ……………………………………...…9

*Levy v. Endeavor Air*
    2022 U.S. Dist. LEXIS 201798
    2022 WL 16645829 (E.D.N.Y. Nov. 1, 2022) ………………………………………….9

*Poplawski v. Metroplex on the Atl., LLC*
    No. 11-CV-3765, 2012 WL 1107711 (E.D.N.Y. Apr. 2, 2012) ………………………….6

*Wojciechowski v Republic Steel Corp.*
    67 A.D.2d 830 (4th Dept 1979) ……………………………………………....……….7

**Statutes**

28 U.S.C. § 1367(c)(2) ……………………………………………………………………10

Defendant Westech Security and Investigation, Inc. ("**Defendant**" or "**Westech**") in the captioned action (the "**Action**") submits this Reply Memorandum (the "**Reply Memorandum**") in further support of Defendant's motion (the "**Motion**")[1] for a judgment, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing the First Amended Class and Collective Action Complaint dated September 5, 2023 (the "**Amended Complaint**") of plaintiff Ana Carrasquillo on behalf of herself, FLSA Collective Plaintiffs, and the Class ("**Plaintiff**"), and seeking a judgment pursuant to Rules 12(b)(6), 12(f), 23(d)(1)(D) of the Federal Rules of Civil Procedure striking the class allegations of the Amended Complaint.[2]

I.   **PRELIMINARY STATEMENT**

A review of the Opposition Memorandum merely serves to demonstrate that Plaintiff's claims lack merit. To this end, not only does Plaintiff fail to properly allege her own direct claims, but her boilerplate and conclusory attempts to set forth any class action or collective allegations are simply not enough under applicable law -- even at the pleading stage. With respect to her direct claim, the Amended Complaint alleges a baseless Federal claim under the Fair Labor Standards Act ("**FLSA**") solely for the purpose of obtaining jurisdiction in this Court. Moreover, despite not having a valid FLSA claim, Plaintiff also asserts numerous New York Labor Law ("**NYLL**") claims that should be dismissed as Plaintiff fails to satisfy the requirements for either a direct action, class action, or a collective action – again, even at the pleading stage.

Plaintiff also contends that the exhibits attached to the Motion were not incorporated by

---

[1] The Motion consists of the following: (i) the Memorandum of Law dated November 20, 2023; and (ii) the Declaration of Melanie Brown, sworn to on October 19, 2023 (the "**Brown Declaration**") and the exhibits attached thereto (collectively, the "**Motion Documents**"). Unless indicated otherwise, defined terms in the Motion Documents carry the same meaning as set forth herein.

[2] The documents submitted by Plaintiff in opposition to the Motion consists of: (i) the Memorandum of Law dated December 1, 2023 (the "**Opposition Memorandum**"); and (ii) a Notice of Supplemental Authority dated December 1, 2023 (the "**Supplemental Memorandum**") and the exhibits attached thereto.

1

reference or integral to the Amended Complaint. However, such a position is illogical since the entirety of Plaintiff's position centers around allegations that she was not properly compensated in accordance with her "clock-in-and-out" times. As such, Plaintiff's wage statements -- <u>which she admits having</u> -- are undeniably integral as they form the very foundation of Plaintiff's claims. *See Fridman v. GCS Computs. LLC ("GCS"),* 2019 WL 1017534 (S.D.N.Y. Mar. 4, 2019).

Furthermore, the documents attached to the Motion conclusively demonstrate that Plaintiff is not only mistaken, but also that her allegations are implausible. More specifically, although Plaintiff asserts that she was "**only**" paid based on her "scheduled" time, the actual timesheets show that she was compensated based on her "clock-in-and-outs," including the fact that Plaintiff was regularly paid for overtime. To this end, out of a total of 173 working days, Plaintiff was paid more than her "scheduled" time for 119 days -- a total of 68.7% of the time -- a fact which is not opposed by Plaintiff.

Next, under established law, class certification issues that are clear on the face of the complaint may be dismissed at the pleading stage. Again, as an initial matter, it has been held that security guards are not manual workers for purposes of NYLL § 191(1)(a). Moreover, the definition of a "manual worker" requires a factual determination that is based not on the job title, but on the actual duties of each employee. This is especially true here since Plaintiff admits that Defendant maintained "security guards" at sites other than a shelter where Plaintiff worked, including schools and construction sites. Thus, on its face, the duties of Plaintiff at a shelter -- which included accepting packages -- would <u>never</u> be applicable to a construction site or a patrol driver.

Finally, rather than focus on the merits of the Motion, Plaintiff instead places an undue emphasis on a technical argument relating to the dismissal of the FLSA claim. To this end, Plaintiff

2

frivolously asserts that the Motion is improper because Defendant raised new arguments and never disclosed these new grounds to Plaintiff or the Court. However, such an assertion fails since Defendant's intention to seek dismissal of the FLSA claim was set forth in correspondence to the Court and counsel prior to filing the Motion, without any objection from counsel.

## II.  LEGAL ARGUMENT

### POINT 1.  The Documentary Evidence is Admissible

Plaintiff contests the admissibility of Defendant's exhibits attached to the Motion asserting they were neither incorporated by reference, nor integral to the Amended Complaint. Plaintiff relies on *Johnson v. Levy* which states that, "[t]o be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents and to be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information, and (2) relied upon the documents in framing the complaint." *Johnson v. Levy*, 812 F. Supp. 2d 167, 177 (E.D.N.Y. 2011) (Spatt, J.) (citation omitted). Defendant satisfies this standard.

It is undisputed that the crux of the Amended Complaint is that: (a) Defendant "would **only** compensate employees based on their schedules," (b) Defendant did not pay "based on employees' punch records" (the "**Punch Records**"), and (c) Defendant "**refuse[d]** to pay for [] overlap time." Brown Declaration, Ex. A, ¶¶ 3, 32 (emphasis added). In addition, Plaintiff also claims that Defendant "failed to provide proper wage statements to Plaintiff and Class Members with every wage payment" (the "**Wage Statements**"). *Id*., ¶ 71. Although Plaintiff acknowledges receiving the Wage Statements, she claims that they "did not include all hours of work for Plaintiff and Class members."[3] *Id*., ¶ 47. In order to assert these allegations, Plaintiff necessarily relied on the Wage

---

[3] The Wage Statements include: (i) exact dates for each week worked at Westech; (ii) employee's hours worked per week; (iii) employee's rate of pay for both regular and overtime hours; and (iv) employee's home address for delivery. Notably, the Wage Statements also include the Punch Records at the bottom of the page. As such, the Punch Records are merely a summary of the Wage Statements.

3

Statements, as no alternative means existed for her to formulate these allegations without such reliance. Importantly, Plaintiff does not allege that she does not possess all Wage Statements. Given that these documents are not only referenced, but also relied upon in framing the Amended Complaint, they should be deemed integral and considered in this Motion.

*Fridman v. GCS Computs. LLC* is analogous to this case and is ignored by Plaintiff. In *GCS Computs. LLC*, the court dismissed a plaintiff's FLSA claim on a 12(b)(6) motion relying on plaintiff's timesheets to demonstrate that the allegations of the amended complaint were based on a false premise and that plaintiff was compensated for his overtime hours. *See Fridman v. GCS Computs. LLC ("GCS"),* 2019 WL 1017534. Similar to the plaintiff in *GCS Computs. LLC*, the Wage Statements demonstrate that Plaintiff's allegations are incorrect since, on their face, these documents -- which Plaintiff admits having -- show that Plaintiff was actually compensated in accordance with her "clock-in-and-outs;" not her "scheduled" hours as alleged in the Amended Complaint. The same is true of the Punch Records.

    **A.**    **The Documents Demonstrate That Plaintiff's Allegations Are Implausible**

An examination of the documents attached by Defendant conclusively demonstrates that Plaintiff is not only mistaken, but also that her allegations are implausible. For example, Plaintiff acknowledges and relies on the Wage Statements, which indicate multiple instances where Defendant did not adhere to the purported practice of "**only** pay[ing] employees for their scheduled time." Brown Declaration, Ex. A, ¶ 32. More importantly, Plaintiff conspicuously excludes the "overtime column" in the Opposition Memorandum, further highlighting the inaccuracy and implausibly of her assertions. To this point, Plaintiff now readily admits that, "**Plaintiff was paid past her scheduled shift on some days.**" Opp. Memo at 9. The use of the word "some" is curious since this statement holds true for 68.7% of the time that Plaintiff worked at Westech. As such, it

4

is evident that Plaintiff's position is either factually inaccurate, similar to the plaintiff in *GCS Computs. LLC*, or simply implausible.

Similarly, Plaintiff alleges that Defendant "knowingly and willfully failed to provide wage and hour notices, at the date of hiring and annually thereafter to Plaintiff [], as required by NYLL § 195(1)" (the "**Initial Wage Notice**"). Brown Declaration, Ex. A, ¶ 70. However, the Initial Wage Notice is dated March 14, 2022 and is <u>signed and initialed</u> by Plaintiff. *See* Brown Declaration, Ex. D. Despite having signed, initialed, and accepted the Initial Wage Notice prior to commencing work, Plaintiff now alleges, <u>for the first time in the Opposition Memorandum</u>, that she possesses limited proficiency in English. *See* Opp. Memo at 10. However, Plaintiff's initials are positioned next to the line indicating, "I have been given this pay notice in **ENGLISH** because it is my primary language." Brown Declaration, Ex. D. If English is not Plaintiff's primary language, she could have indicated her actual primary language in the space provided below her initials. Nevertheless, her allegation that she did not receive the Initial Wage Statement is implausible.

**POINT 2.** <u>**Plaintiff's Allegations are Contradictory**</u>

Plaintiff's allegations of Defendant's violation of the FLSA are also inconsistent with other allegations set forth in the Amended Complaint. For example, Plaintiff alleges that she would "arriv[e] at work and beg[in] working an hour before her schedule each shift." Brown Declaration, Ex. A, ¶ 33. Plaintiff now alleges that not all employees would arrive to work early each day. *See* Opp. Memo at 9. However, if Plaintiff arrived an hour early for each shift, it logically follows that the subsequent employee would never be staying past his or her shift. Plaintiff's coexistence with another employee who did not stay late directly contradicts the central theme of the Amended Complaint that "Plaintiffs, FLSA Collective Plaintiffs, and Class members, were all similarly

5

[situated and] not compensated for their actual clocked-in hours, resulting in Defendant undercompensating each employee for each shift." *Id*. On its face, this assertion is implausible.

Additionally, as demonstrated in Section IV below, Plaintiff asserts that all workers "engaged in the same or similar types of physical labor as Plaintiff." *Id*., ¶ 36. However, a plain reading of the Amended Complaint reveals that this allegation is implausible and inherently contradictory. While Plaintiff states that she worked at a shelter, she also acknowledges that Defendant employed patrol drivers. *Id*., ¶ 16. Based on her own allegations, it is evident that not all employees are undertaking identical tasks, as those in patrols cars are not involved in accepting packages, walking patrols, or escorting visitors through halls of a shelter.

**POINT 3.** **Security Guards Do Not Qualify as Manual Workers**

It is undisputed that *Poplawski v. Metroplex on the Atl., LLC* states that "since a security guard is not a manual laborer, the defendants were not required to pay him for hours worked within seven days." *Poplawski v. Metroplex on the Atl., LLC*, No. 11-CV-3765, 2012 WL 1107711, at *8 (E.D.N.Y. Apr. 2, 2012). Nevertheless, even if security guards are somehow classified as "manual workers," Plaintiff's reliance on *Poplawski* underscores the necessity of an **individualized analysis** for each member of the class as there is no "one size fits all" approach for "security guards." To this point, Judge Jack D. Weinstein's differentiation amongst the plaintiff's roles as a security guard, warehouse worker, and construction worker highlights the necessity of conducting a deposition of each class member, as it is the only means by which one can ascertain the specific duties of each employee. *Id*.

Similarly, Plaintiff filed the Supplemental Memorandum which makes no reference to manual workers and is entirely supportive of Defendant's position that a factual, independent analysis is necessary. *See* Dkt. No. 35. Despite Plaintiff's use of the term "class-wide basis," there

is simply no correlation or analogy between the Industrial Board of Appeals Decision and a federal class action. Also, upon review of the Decision's transcript, there is no language even determining that security guards are "manual workers." Notably, the transcript explicitly states that, "[t]he claimants in this case **were all employed as security guards by Miracle Security, and worked at public schools** [] within the City of New York." *Id.*, Ex. B, Transcript of Hearing Before the Industrial Board of Appeals, at p. 10. (emphasis added). This underscores Defendant's position that Westech employees have distinct duties and responsibilities, in contrast to the claimants in the Industrial Board of Appeals' Decision.

**POINT 4.** <u>**The Motion to Strike is Not Premature**</u>

As set forth in *Baby Brezza Enter. LLC*, which Plaintiff ignores, class certification issues that are clear on the face of the complaint may be dismissed at the pleading stage. *Borgese v. Baby Brezza Enter. LLC*, No. 20-civ-1180, 2021 U.S. Dist. LEXIS 30216, *5 (VM) (S.D.N.Y. Feb. 18, 2021)(citation omitted). Plaintiff seemingly concedes this fact with its reliance on *Wojciechowski v. Republic Steel Corp*. which allows for a motion to dismiss before assessing the propriety of a class action if it *conclusively* appears from the complaint and there is no legal basis for class relief. *Wojciechowski v Republic Steel Corp.*, 67 A.D.2d 830, 831 (4th Dept 1979). <u>The analysis for the Court here is whether the issues are clear on the face of the Amended Complaint. As set forth herein and below, the answer is a resounding "yes."</u>

<u>Here, the allegations of the Amended Complaint, **on their face**, demonstrate that the NYLL claim will require an individualized factual analysis as to each employee's specific duties.</u> There are no allegations in the Amended Complaint that <u>**all**</u> "security guards" at Westech performed the <u>exact same tasks</u> for the <u>exact hours</u> as Plaintiff. And there simply cannot be. Although Plaintiff alleges that her work was "interchangeable," there is not a single factual allegation that

7

Defendant's varied work sites are each the same requiring similar work from all employees. *See* Opp. Memo at 12. It is simply implausible, on its face, that security guards across three (3) states and six (6) industries -- (i) construction sites, (ii) schools, (iii) retail stores, (iv) grocers, (v) hospitality, and (vi) residential buildings -- all perform the exact same tasks for the exact same amount of time during their workday.[4]

Nevertheless, Plaintiff alleges that, "[c]lass members like Plaintiff also spent over 25% of their day engaged in the same or similar types of physical labor as Plaintiff." Brown Declaration, Ex. A, ¶ 36. Again, a plain reading of the Amended Complaint demonstrates that this allegation is implausible on its face. Plaintiff worked as a security guard for Defendant at a shelter site in New York. *See* Brown Declaration, Ex. B. It is implausible that she is somehow "similarly situated" and had "similar duties" to employees who worked as patrol drivers and site supervisors at other sites, especially since each site necessarily requires entirely different duties. For example,

- Plaintiff asserts that she accepts, moves, lifts, carries, and organizes packages "to an out of the way room and back on behalf of the shelter's residents []." Brown Declaration, Ex. A, ¶ 36. As a matter of logic, such tasks would never be pertinent at a grocery store or a construction site -- there are simply no packages at a construction site and the grocery stores' employees would handle duties relating to the operation of the store. Also, Plaintiff cannot possibly ascertain the time spent for tasks performed by another security guard at a different work site.

- The same is true when Plaintiff alleges that she "escort[s] visitors to the shelter throughout the building []." *Id*. It is evident that a security guard at a construction site, grocer, or retail store would **never** be escorting visitors.

- Finally, Plaintiff alleges that she engages in "multiple patrols per day of <u>all floors</u> of the shelter Plaintiff secures []." *Id*. However, it is self-evident that a security guard driving in a patrol car would **never** be engaged in floor patrolling. The tasks are fundamentally different, with one requiring walking and the other involving driving a car -- two entirely different functions, the latter unrelated to manual labor.

---

[4] Such an argument also demonstrates that there are no plausible allegations in the Amended Complaint as to the existence of other class members. It is simply implausible that the class could be comprised of workers that, on the face of the Amended Complaint, did not perform the same tasks as Plaintiff.

8

Thus, on its face, Plaintiff cannot plausibly allege what the numerous employees in New York were doing, and for how long -- this is a highly individualized analysis that is **<u>fundamentally different</u>** for each employee.

Finally, Plaintiff's reliance on *Krawitz v. Five Below, Inc.* 2023 U.S. Dist. LEXIS 175800, *8-9 (S.D.N.Y. 2023) is misplaced. *Krawitz* involved a cashier associate at a single location. It is undisputed that cashier associates engage in uniform activities regardless of the location or store they are situated in -- the exact opposite of what is alleged here. Similarly, Plaintiff relies on *Levy v. Endeavor Air*, 2022 U.S. Dist. LEXIS 201798, 2022 WL 16645829 (E.D.N.Y. Nov. 1, 2022), which pertains to flight attendants. Again, flight attendants perform identical tasks irrespective of the airline they are employed by. In contrast, the situation differs for security guards, as their responsibilities vary depending on the site and role. As set forth above, it is undisputed that a security guard at a shelter would undertake different duties compared to a security guard stationed at a school, retail store, grocer, hospital, or construction site. The significance of this distinction cannot be highlighted enough and it is clear on the face of the Amended Complaint that the NYLL claim is not appropriate for class action treatment.

**POINT 5.**     <u>**The Court Should Decline to Exercise Supplemental Jurisdiction**</u>

Plaintiff alleges that, "the Court should retain supplemental jurisdiction over her state law claims" because the two claims "arise from a 'common nucleus of operative fact.'" Opp. Memo at 20. As an initial matter, "[i]t is well settled that [] where federal claims are dismissed before trial, the State Claims should be dismissed as well." *Brooklyn Heights Ass'n v. Nat'l Park Serv.*, 818 F. Supp. 2d 564, 571 (E.D.N.Y. 2011). Moreover, the Court should decline to exercise supplemental jurisdiction over the state claims because these claims substantially predominate over the FLSA claim. To this end, under applicable law, a court "may decline to exercise supplemental

jurisdiction" over a state law claim if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). Here, Plaintiff's state claims will require a substantial amount of proof as an individual analysis and depositions will be needed for each and every class member. *See Hernandez v. Mauzone Home Kosher Prods. of Queens, Inc.*, No. 12 Civ. 2327 (SJ) (JMA), 2013 U.S. Dist. LEXIS 142425 (E.D.N.Y. Sept. 30, 2013). (citation omitted).

**POINT 6.**     **Plaintiff's Misplaced Technical Argument**

Plaintiff's assertion that Defendant "improperly rais[ed] new arguments" that were "never disclosed [] to Plaintiff or the Court" prior to filing its Motion is unfounded. *See* Opp. Memo at 1. In fact, Defendant informed counsel and the Court of its intention to seek dismissal of the FLSA claim on October 13, 2023. Plaintiff raised no objection at that time, or in either the Meet and Confer that occurred on October 23, 2023 or the Joint Letter that was filed with the Court on October 30, 2023. As such, this contention is without merit and there is simply no prejudice to Plaintiff.

**III.     CONCLUSION**

**WHEREFORE,** Defendant respectfully requests that the Court grant the Motion in its entirety, together with such other further relief as this Court deems just and proper.

Dated: New York, New York
          December 11, 2023

**CERVINI LAW GROUP PLLC**

By: ___*Joseph P. Cervini, Jr.*___
          Joseph P. Cervini, Jr.
475 Park Avenue South, 18th Floor
New York, New York 10016
Tel. 917-304-9231
jcervini@cervinilawgroup.com
*Counsel for Defendant Westech Security and Investigation Inc.*

10

## CERTIFICATION OF COMPLIANCE

The total number of words contained in this Reply Memorandum, inclusive of point headings and footnotes and exclusive of the caption, table of contents, table of authorities, and signature block, is 3,295.

<i>Joseph P. Cervini, Jr.</i><br>
Joseph P. Cervini, Jr.