```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/17/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANA CARRASQUILLO, *on behalf of herself,*
*FLSA Collective Plaintiffs, and the Class*,

                    Plaintiffs,

            -against-

WESTECH SECURITY AND
INVESTIGATION INC.,

                    Defendant.

---

1:23-cv-04931 (MKV)

**OPINION GRANTING IN
PART AND DENYING IN PART
MOTION TO DISMISS THE
AMENDED COMPLAINT**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Ana Carrasquillo ("Plaintiff") brings this action against her former employer, Westech Security and Investigation Inc. ("Westech" or "Defendant"), asserting claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), including claims for unpaid overtime wages, failure to pay wages at a prescribed frequency, and improper record keeping. Defendant now moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) and to strike to strike the class action allegations contained therein. For the reasons set forth below, Defendant's motion to dismiss is GRANTED in part and DENIED in part.

**BACKGROUND[1]**

Plaintiff was formerly employed as a security guard by Defendant Westech, a security and private investigation company, for 8 months from approximately April 2022 through December 31, 2022. AC ¶¶ 3, 28. As a security guard, Plaintiff's duties included various daily physical tasks, including engaging in multiple patrols per day on a number of floors of the shelter she

---

[1] The Court draws its facts from the Amended Complaint [ECF No. 16] ("AC"), the well-pleaded allegations of which are taken as true for the purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

secures; accepting, moving, lifting, carrying, and organizing packages (which can weigh over 30 pounds) to an out of the way room and back on behalf of the shelter's residents; standing on guard for long periods of time; and escorting visitors to the shelter throughout the building.  AC ¶ 36.

Plaintiff began her employment at a rate of $16.00 per hour and beginning in November 2022 through the end of her employment, she was paid at a rate of $17.00 per hour.  AC ¶ 31. Additionally, from the start of her employment until September 2022, "Plaintiff was scheduled to work six (6) days per week for eight (8) hours, from 4:00 p.m. to 12:00 a.m."  AC ¶ 29.  Plaintiff was also scheduled to work a double shift of sixteen (16) hours, from 8:00 a.m. to 12:00 a.m., once per week during this period.  AC ¶ 29.  As such, from April 2022 through September 2022, Plaintiff was scheduled to work "a total of fifty-six (56) hours per week."  AC ¶ 29.  From September 2022 to the end of her employment, "Plaintiff was scheduled to work five (5) days per week, from 8:00 a.m. to 4:00 p.m., for a total of forty (40) hours per week."  AC ¶ 29.

Plaintiff alleges, however, that during the entire course of her employment she worked overtime hours in excess of her schedule for which she was not compensated.  AC ¶ 30.  Defendant purportedly designed the schedule of its employees' shifts to run "back-to-back" and would pay employees for their scheduled time despite requiring employees to clock-in-and-out.  AC ¶ 32.  In other words, "[a]lthough Defendant required employees to clock-in once beginning work and out once ending work, Defendant would not pay based on these clock-ins."  AC ¶ 32.  Instead, employees were paid for their *scheduled* time, despite the scheduled hours not always reflecting the precise time that an employee clocked in and out.  AC ¶ 32.

Plaintiff alleges that in addition to compensating employees for their *scheduled* work time (as opposed to their *actual* work time), Defendant's schedules themselves failed to account for all expected hours of work.  AC ¶ 32.  Defendant allegedly required overlap of work between security

guards and their relief guards yet refused to pay for this overlap time.  AC ¶ 32.  Namely, despite

"scheduling" the employees' shifts to run "back-to-back," Defendant required employees to stay

past their shift to wait for the incoming employee to arrive on site, and then debrief the arriving

employee before leaving.  AC ¶ 32.  That is, Defendant's policy mandated overlap work to occur

on each shift, but the schedules did not account for this time.  AC ¶ 32.  And because employees

were paid based on their punch records, Defendant's policy purportedly resulted in a "windfall of

retained wages for Defendant."  AC ¶ 32.  For Plaintiff, who worked at least five days "each week,"

arrived at work and began working an hour before her schedule each shift, and waited to debrief

her relief guard for an additional twenty minutes after her schedule each shift, the difference

between her clock-in times and her scheduled work hours resulted in her being undercompensated

"by six hours and forty minutes each week."  AC ¶ 33.

Moreover, Plaintiff alleges that Defendant regularly failed to pay her within seven days of

the end of the week as required by the NYLL for "manual workers," and instead paid her biweekly.

AC ¶ 33.  Finally, Plaintiff alleges that Defendant never provided her with an initial wage notice

upon hiring her and at dates of all wage changes thereafter, and failed to provide Plaintiff with

proper wage statements throughout her employment.  AC ¶¶ 42, 43.

Plaintiff commenced this action by filing a Complaint and, with leave of the Court,

subsequently filed an Amended Complaint.  [ECF No. 1]; [ECF No. 16, Amended Complaint]

("Complaint" or "AC").  Plaintiff asserts claims of unpaid overtime wages under the FLSA, failure

to pay wages at a prescribed frequency under the NYLL, and improper record keeping claims

under the NYLL.  Defendant now moves to dismiss the Amended Complaint pursuant to Fed. R.

Civ. P. 12(b)(6) and to strike the class action allegations contained therein.  [ECF No. 30]; [ECF

No. 31, Memorandum of Law in Support] ("Def. Br."); [ECF No. 32, Declaration of Melanie

Brown] ("Brown Decl."); [ECF No. 38, Reply Memorandum of Law] ("Def. Reply").  Plaintiff opposes the motion [ECF No. 34] ("Pl. Opp.") and has submitted supplemental authorities in support of her opposition to the motion [ECF No. 35].

## LEGAL STANDARD

### *Failure to State a Claim Under Rule 12(b)(6)*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  More specifically, Plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*.  The Court must " 'accept[] all of the complaint's factual allegations as true and draw[] all reasonable inferences in the plaintiff's favor.' " *Siegel v. HSBC North America Holdings, Inc.*, 933 F.3d 217, 222 (2d Cir. 2019) (quoting *Giunta v. Dingman*, 893 F.3d 73, 78–79 (2d Cir. 2018)).  In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Coyle v. Coyle*, 153 F. App'x 10, 11 (2d Cir. 2005) (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)).

### *Motion to Strike Under Rule 12(f)*

"The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  In general, "motions to strike are disfavored." *Ambac Assur. Corp. v. EMC Mortg. Corp.*, No. 08 Civ 9464 (RMB) (MHD), 2009 WL 734073, at *1 (S.D.N.Y. Mar. 16, 2009) (quoting *Roe v. City of N.Y.*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001)).  "Where a demand for damages is not recoverable as a matter of law, however, it may be stricken."

*Phila. Stock Exch. v. Int'l Sec. Exch., Inc.*, No. 05 Civ. 5390, 2005 WL 2923519, at *1 (S.D.N.Y. Nov. 2, 2005).  The Court will "deem the non-moving party's well-pleaded facts to be admitted, draw all reasonable inferences in the pleader's favor, and resolve all doubts in favor of denying the motion to strike." *Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*, No. 07 Civ. 9580, 2008 WL 4833001, at *4 (S.D.N.Y. Nov. 5, 2008); *see also Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

## DISCUSSION

### I.    Documents Properly Considered on This Motion

As a threshold matter, there is dispute among the parties as to which documents properly may be considered at this stage.  As previously noted, in considering a motion to dismiss pursuant to Rule 12(b)(6), it is well established that a pleading is deemed to include any "written instrument" that is attached to it as "an exhibit," Fed. R. Civ. P. 10(c), or is incorporated in it by reference, *see, e.g.*, *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); *see also Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020).  "And even if the 'plaintiff chooses not to attach' an instrument 'to the complaint or [to] incorporate [it] by reference,' if it is one 'upon which' the plaintiff 'solely relies and which is integral to the complaint,' the court may take the document into consideration in deciding the defendant's motion to dismiss." *Lynch*, 952 F.3d at 79 (quoting *International Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995)).

Defendant has submitted with its motion to dismiss a Declaration of Melanie Brown ("Brown Decl."), the Accounts Payable/Payroll Manager of Defendant, attaching (1) Plaintiff's alleged Punch Records; (2) Plaintiff's alleged wage statements; and (3) Plaintiff's alleged initial wage notice.  *See* Brown Decl., Exhibit B ("Punch Records"); Brown Decl., Exhibit C ("Wage Statements"); Brown Decl., Exhibit D ("Initial Wage Notice").  Defendant argues that the Court may properly consider these documents on its motion to dismiss because Plaintiff "relies upon"

these documents with respect to certain causes of action, and thus, they are "incorporated by reference or integral to the Amended Complaint."[2]  Def. Br. at 6.

However, the Second Circuit cautions that "even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document" and it must be clear that "there exist no material disputed issues of fact regarding the relevance of the document." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021), *cert. denied*, __ U.S. __, 142 S. Ct. 2679 (2022) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)); *see also Dixon v. von Blanckensee*, 994 F.3d 95, 102 (2d Cir. 2021) (noting that a party "to a written contract" may not "make assertions about the terms of the contract and preclude a court from considering on a motion to dismiss the *undisputed* document that embodies those terms") (emphasis added).  This is not the case here.

First, Plaintiff disputes the authenticity of the Punch Records, arguing that "[a] simple review of the rounded, robotic times reveal that it is not possible these times are Plaintiff's actual clock-ins." Pl. Opp. at 7 ("Ms. Brown's statement that these records reflect Plaintiff's actual clock-ins are untrue on their face . . . Given the robotic nature of the supposed punch-times, which frequently and unnaturally match Plaintiff's schedule to the minute[.]").  With respect to the recordkeeping related documents proffered by Defendant, Plaintiff similarly disputes them.  *See* Pl. Opp at 10 ("Plaintiff alleges that she did not receive a wage notice, which is not at all contradicted by the document attached to Defendants' [sic] motion purporting to be a proper notice" and "[t]he notice is missing elements required by New York Labor Law[.]").  Because there is dispute "regarding the authenticity [and] accuracy of the document[s]" that Defendant

---

[2] Specifically, the Defendant argues that Plaintiff relies on the Punch Records in support of her FLSA overtime claim, and the Wage Statements and Initial Wage Notice in support of her NYLL recordkeeping claims.  Def. Br. at 6–7.

urges the Court to consider, the Court does not consider them on this motion. *Foreman*, 19 F.4th at 106 (quoting *DiFolco*, 622 F.3d at 111).

## II.    FLSA Overtime Claim

Defendant moves to dismiss Plaintiff's FLSA overtime claim for failure to state a claim,[3] arguing that: (1) the FLSA overtime claim is based upon "nothing more than conclusory allegations devoid of any allegations of actual fact;" (2) is "directly contradicted by documentary evidence;" and (3) Plaintiff's allegations are "fundamentally flawed" because they are "inconsistent with other allegations set forth in the Amended Complaint." Def. Br. at 7. As previously discussed, *see supra* Section I, the Court does not consider on this motion the "documentary evidence" proffered by Defendant.[4] Accordingly, the Court addresses Defendant's remaining two arguments in turn.

### A.    Plaintiff Alleges Sufficient Factual Matter to State a Claim.

First, Defendant argues that Plaintiff's FLSA overtime claim must be dismissed because it is based upon "nothing more than conclusory allegations devoid of any allegations of actual fact." Def. Br. at 7. The FLSA requires a regulated employer who "employ[s] any of his employees . . . for a workweek longer than forty hours" to compensate that employee "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). "[T]o survive a motion to dismiss [an FLSA overtime claim], Plaintiff[] must allege sufficient

---

[3] In her Opposition, Plaintiff argues that Defendant's motion to dismiss her FLSA overtime claim "improperly rais[es] new arguments not presented" in Defendant's pre-motion conference letter to the Court. Pl. Opp. at 1. The Court notes that in an October 2023 letter to the Court—although filed *after* Defendant's motion to dismiss—Defendant advised the Court that it intended to move to dismiss Plaintiff's sole FLSA claim. [ECF No. 23]. In the eleven months since Defendant filed its letter, Plaintiff has not once asked the Court for leave to amend its Complaint. Notwithstanding, because the Court does not credit Defendant's arguments related to the FLSA overtime claim, and instead rules in favor of Plaintiff, the Court need not further address this issue.

[4] Defendant does not move for summary judgment as it could, and the Court does not convert Defendant's motion to dismiss into a summary judgment motion since there are clear disputed issues of fact.

factual matter to state a plausible claim that [she] worked compensable overtime in a workweek

longer than 40 hours." *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106, 114

(2d Cir. 2013). Accordingly, "to state a plausible FLSA overtime claim, a plaintiff must

sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in

excess of 40 hours." *Id*. (emphasis added). While plaintiffs need not "provide a week-by-week

recounting of the hours they worked" or "keep 'careful records' of the hours they worked,"

plaintiffs still "must plead FLSA overtime claims with 'specificity.' " *Herrera v. Comme des

Garcons, Ltd.*, 84 F.4th 110, 115–16 (2d Cir. 2023) (citing *Nakahata v. New York-Presbyterian

Healthcare System, Inc.*, 723 F.3d 192, 200 (2d Cir. 2013)). In other words, "[i]t is not enough

to allege that the plaintiff worked in excess of forty hours 'in some or all workweeks.' "

*Herrera*, 84 F.4th at 114.

As a general rule, allegations that a plaintiff "typically" or "generally" worked in excess of

40 hours a week are insufficient to satisfy the pleading standard in FLSA overtime cases. *Dejesus

v. HF Mgmt. Servs.*, LLC, 726 F.3d 85, 89–90 (2d Cir. 2013). Nevertheless, the pleading standard

in an FLSA overtime case is satisfied "if plaintiffs allege that their regularly scheduled workweek

for a *given period of time* included more than forty hours of work, so that they were eligible for

overtime during *every* week in which they worked their regular schedule." *Herrera*, 84 F.4th at

117 (emphasis added). "In such an instance, all plaintiffs need allege is the period of time they

were employed while working that regular schedule." *See id*. Plaintiff sufficiently does so here.

Plaintiff alleges that from the start of her employment until September 2022, she "was *scheduled

to work six (6) days per week for eight (8) hours, from 4:00 p.m. to 12:00 a.m.*" and once a week

"*scheduled* to work a double shift of sixteen (16) hours, from 8:00 a.m. to 12:00 a.m.," totaling

"fifty-six (56) hours per week" for this period. AC ¶ 29. She also alleges that from September

2022 to the end of her employment, she "was scheduled to work five (5) days per week, from 8:00 a.m. to 4:00 p.m., for a total of forty (40) hours per week." AC ¶ 29. However, Plaintiff further alleges that, in addition to her regularly scheduled hours, she arrived at work and began working an hour before her schedule "*each* shift," and waited to debrief her relief guard for an additional twenty minutes after her schedule "*each* shift," totaling an additional "six hours and forty minutes *each week*" that she worked. AC ¶ 33 (emphasis added).

These allegations, although perhaps sparse in factual detail, are sufficiently specific to plausibly support Plaintiff's claim that she was entitled to overtime under the FLSA, because her "regularly scheduled workweek for a given period of time included more than forty hours of work, so that [she was] eligible for overtime during *every* week in which [she] worked [her] regular schedule." *Herrera*, 84 F.4th at 117. Such allegations adequately state an FLSA overtime claim under the Second Circuit's precedent. *Id*.; *DiGiovanni v. Ergoteles LLC*, No. 22 Civ. 09118 (PGG), 2023 WL 8716893, at *4 (S.D.N.Y. Oct. 23, 2023) (holding allegations that plaintiff "worked five days per week, that her hours varied, up to 65 hours per week, and that [d]efendants did not pay Plaintiff premium overtime for hours worked in excess of 40 hours per week" adequately pleaded an FLSA violation (internal quotation marks omitted)); *see also, e.g.*, *Kuck v. Planet Home Lending, LLC*, 354 F. Supp. 3d 162, 168–69 (E.D.N.Y. 2018) ("Here, the [p]laintiffs are not merely claiming that they 'occasionally,' 'typically,' or 'regularly' worked more than 40 hours in some weeks," but rather "50-55 hours during *every single week* of their employment. . . . These allegations clearly satisfy the Second Circuit's" precedent. (emphasis added)) (collecting cases); *Martinez v. Triumph Constr. Corp.*, No. 21 Civ. 4137 (JPO), 2022 WL 861847, at *3 (S.D.N.Y. Mar. 22, 2022) (allegations that plaintiff "worked 60–84 or more hours *each week* for the entirety of his employment with [d]efendants" adequately stated an FLSA

overtime claim) (emphasis added); *Hobbs v. Knight-Swift Transp. Holdings, Inc.*, No. 21 Civ. 1421 (AT), 2022 WL 118256, at *4 (S.D.N.Y. Jan. 12, 2022) (allegations that plaintiffs "worked 24 hours per day *every day* of their employment" sufficed to plead an FLSA claim) (emphasis added).

Additionally, Plaintiff does not merely allege that she worked over forty hours per week, each week, but additionally provides a particularized estimate of her overtime hours. As discussed above, Plaintiff alleges that from April 2022 through September 2022, she worked "fifty-six (56) hours per week"—*i.e.*, at least sixteen weekly hours in overtime. AC ¶ 29. From September 2022 through December 2022, she worked "forty (40) hours per week," plus an additional "six hours and forty minutes *each week*" before and after her scheduled hours—*i.e.*, six hours and forty minutes in weekly overtime hours. AC ¶¶ 29, 33. Although a plaintiff is not required to estimate his or her overtime to state an FLSA claim, the Court finds that Plaintiff's "approximation of overtime hours worked . . . help[s] draw [her] claim closer to plausibility." *Nakahata*, 723 F.3d at 201 n.10 (internal quotation marks omitted) (quoting *Lundy*, 711 F.3d at 114 n.7).

### B. Plaintiff's Allegations Are Not Contradictory.

Defendant also argues that certain of Plaintiff's allegations in support of her FLSA overtime claim contradict each other. Def. Br. at 2, 13–15. Specifically, Defendant argues that Plaintiff's allegations that Defendant "designed the schedule of their employees' shifts to run 'back-to-back' " and "required employees to stay past their shift" to "wait for the incoming employee to arrive on site without pay" are inconsistent with Plaintiff's allegation that she "began working an hour before her schedule each shift." AC ¶¶ 32–33. In other words, Defendant argues that if Plaintiff and other employees "arrived on site early for each shift, there would never be a need to wait for the subsequent employee to arrive," and Plaintiff would instead need to allege that "all employees habitually arrived late for work." Def. Br. at 14.

Defendant's argument, however, focuses entirely on these more general allegations to the exclusion of Plaintiff's explicit and more specific allegations that *she* did, indeed, work more than forty hours a week, each week, throughout her employment. *See, e.g.*, AC ¶¶ 29, 33.  And as the Court already discussed above, Plaintiff's allegations with respect to *her* hours worked are sufficient to state a plausible FLSA overtime claim. *See supra* Section II.A.  To the extent Defendant argues that these allegations are inconsistent or insufficient as to "other employees," that is a question with respect to Plaintiff's collective and/or class allegations and not an argument against the FLSA overtime claim that Plaintiff asserts on behalf of *herself* specifically.  For the reasons discussed, Defendant's motion to dismiss *Plaintiff's* FLSA overtime claim is denied.

## III.    NYLL Frequency of Pay Claim

Defendant next moves to dismiss Plaintiff's claim that Defendant failed to pay her wages within seven days of her work in violation of NYLL Section 191.  Def. Br. at 15.  Section 191, which is part of article 6 of the NYLL, provides: "A manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned."  An employee who is "paid less than the wage to which . . . she is entitled" under the provisions of article 6 may bring a "wage claim" pursuant to Section 198(1-a) of the NYLL, "to recover the full amount of any underpayment" as well as "reasonable attorney's fees, prejudgment interest . . . and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law," an additional payment of "liquidated damages equal to one hundred percent of the total amount of the wages found to be due."  NYLL § 198(1-a).

Although Defendant does not raise the issue, as a threshold matter, New York courts are currently split as to whether Section 191, in conjunction with Section 198, confers a private right of action, and the New York Court of Appeals has not yet addressed this question. *See Zachary v.*

*BG Retail, LLC*, __ F. Supp. 3d __, 2024 WL 554174, at *5 (S.D.N.Y. Feb. 12, 2024). The majority of courts in this Circuit, however, have held that "based on the current legal landscape," the New York Court of Appeals likely would find that a late wage claim under Section 191 is privately actionable even if that right is not expressly codified in the NYLL.[5] *Bazinett v. Pregis LLC*, No. 1:23 Civ. 790 (MAD) (ML), __ F. Supp. 3d __, 2024 WL 1116287 (N.D.N.Y. Mar. 14, 2024); *see also Zachary*, __ F. Supp. 3d __, 2024 WL 554174, at *5; *Urena v. Sonder USA Inc.*, No. 22 Civ. 7736 (VM), 2024 WL 1333012 (S.D.N.Y. Mar. 28, 2024); *Cooke v. Frank Brunckhorst Co., LLC*, No. 23 Civ. 6333, 2024 WL 2263087, at *8 (E.D.N.Y. May 18, 2024); *Sarmiento v. Flagge Contracting Inc.*, No. 22 Civ. 9718 (VSB) (JLC), 2024 WL 806137, at *1 (S.D.N.Y. Feb. 27, 2024), *report and recommendation adopted*, 2024 WL 1908607 (S.D.N.Y. May 1, 2024). As noted, Defendant does not raise this issue in its motion or contend that Plaintiff may not bring a claim pursuant to Section 191. In any event, although this Court cannot predict with certainty how the New York Court of Appeals would rule, the Court agrees with the prevailing view among District courts in the Second Circuit that Section 191, in conjunction with Section 198, confers a private right of action.

An employee is underpaid within the meaning of Section 198 each time her employer is required, under Section 191, to pay her for one week of wages and instead pays her nothing on that

---

[5] Federal courts applying state law "are generally obliged to follow the state law decisions of state intermediate appellate courts." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199–200 (2d Cir. 2005). However, such rulings can be disregarded if the Court "is convinced by other persuasive data that the highest court of the state would decide otherwise." *DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005). Further, when there is "an apparent split in authority among the Appellate Divisions," a federal court is not bound by the law of the department that would apply if the case were filed in state court where the federal court sits, but rather must predict "how the Court of Appeals would rule." *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116–17 (2d Cir. 2000). There is currently a split between the Departments of New York's Appellate Division as to whether Section 191 confers a private right of action. *Compare Vega v. CM & Associates Construction Management, LLC*, 175 A.D.3d 1144, 107 N.Y.S.3d 286 (1st Dep't 2019) (private right of action recognized) *with Grant v. Global Aircraft Dispatch, Inc.*, 223 A.D.3d 712, 204 N.Y.S.3d 117 (2d Dep't 2024) (there is no private right of action). Most courts in this Circuit have chosen to follow *Vega*, which holds that Section 191 does confer a private right of action. *Vega*, 175 A.D.3d at 1145.

date.  NYLL § 198(1-a).  Indeed, NYLL Section 191(2) expressly provides that "[n]o employee shall be required as a condition of employment to accept wages at periods other than as provided in this section"—*e.g.*, biweekly as Plaintiff alleges that she was paid by Defendant.  AC ¶ 33. Accordingly, the Court turns to the merits of Plaintiff's "frequency of pay" claim.

Defendant argues that Plaintiff's frequency of pay claim fails because she is not a "manual worker" under Section 191, and therefore, the weekly wages requirement does not apply to her. Def. Br. at 15.  Under NYLL Section 190(4), a "manual worker" is defined as "a mechanic, workingman or laborer."  NYLL § 190(4).  Defendant concedes that the New York State Department of Labor expands on this provision and interprets it to include "employees who spend more than 25 percent of their working time performing physical labor."  N.Y. Dep't of Labor Opinion Letter, No. RO-09-0066 (May 21, 2009); *see* Def. Br. at 17; *see also Department Rankine v. Levi Strauss & Co.*, 674 F. Supp. 3d 57, 67 (S.D.N.Y. 2023); *Kaur v. Natasha Accessories Ltd.*, No. 23 Civ. 6948 (JPO), 2024 WL 3429129, at *3 (S.D.N.Y. July 16, 2024); *Balderramo v. Go New York Tours Inc.*, 668 F. Supp. 3d 207, 225 (S.D.N.Y. 2023); *Zachary*, __ F. Supp. 3d __, 2024 WL 554174, at *9; *Gumaneh v. Vilano Emp. Servs., Inc.*, No. 22 Civ. 774 (LTS), 2023 WL 5715613, at *7 (S.D.N.Y. Sept. 5, 2023).

Here, Plaintiff alleges that "[o]ver twenty-five percent of [her] job duties consisted of physical tasks."  AC ¶ 36.  To this end, Plaintiff alleges that her duties included, but were not limited to the following daily physical tasks:

> (i) engaging in multiple patrols per day of all floors of the shelter Plaintiff secures (at least one hour), (ii) accepting, moving, lifting, carrying, and organizing packages, which can weigh over 30 pounds, to an out of the way room and back on behalf of the shelter's residents (at least one hour), (iii) standing on guard for long periods of time (at least one hour), and (iv) escorting visitors to the shelter throughout the building (at least thirty minutes).

AC ¶ 36.  Relying exclusively on an unreported Eastern District of New York decision, Defendant argues that security guards unequivocally and categorically "do[] not fall into the category of a 'manual worker' " under Section 191.  Def. Br. at 15 (citing *Poplawski v. Metroplex on the Atl., LLC*, No. 11-CV-3765 (JBW), 2012 WL 1107711, at *8 (E.D.N.Y. Apr. 2, 2012) ("Since a security guard is not a manual laborer, the defendants were not required to pay him for hours worked within seven days.")).  At this pleading stage, the Court is not prepared to find that Plaintiff is not a manual laborer.  Courts have consistently held that " 'unpacking, stocking and organizing inventory,' *Rankine*, 674 F. Supp. 3d at 67, and 'lifting and stacking shipment boxes,' *Gillett v. Zara USA, Inc.*, No. 20 Civ. 3734, 2022 WL 3285275, at *6 (S.D.N.Y. Aug. 10, 2022), qualify as manual labor."  *Gumaneh v. Vilano Emp. Servs., Inc.*, No. 22 Civ. 774 (LTS), 2023 WL 5715613, at *7 (S.D.N.Y. Sept. 5, 2023).  Moreover, courts have held that "carpentry workers, cooks, wait staff, grocery store employees, janitorial staff, hotel maids, airport chauffeurs, and pizzeria workers have [all] been found to be 'manual workers' " under Section 191.  *Rankine*, 674 F. Supp. at 67 (quoting *Beh v. Community Care Companions, Inc.*, No. 19 Civ. 1417 (JLS) (HBS), 2021 WL 3914297, at *3 (W.D.N.Y. Feb. 1, 2021) (collecting cases)).

Plaintiff pleads that more than twenty-five percent of her job duties consisted of physical tasks and provides specific examples of this labor as well as specific time estimates of each task.  AC ¶ 36.  At the pleading stage, the Court accepts Plaintiff's well-plead factual allegations as true and finds that such allegations are sufficient for her NYLL Section 191 claim to survive a Rule 12(b)(6) motion to dismiss.  *See, e.g.*, *Rankine*, 674 F. Supp. at 67 (denying defendant's motion to dismiss on grounds that plaintiff was not a manual laborer where plaintiff "pleads that more than 25 percent of his responsibilities included manual labor, and provides specific examples of this labor," including unpacking, stocking and organizing inventory, folding clothes, and tending to

fitting rooms); *Levy v. Endeavor Air*, 638 F. Supp. 3d 324, 331 n.5 (E.D.N.Y. 2022) (finding that defendant's motion to dismiss on grounds that plaintiff was not a manual laborer "would [not] likely succeed" where plaintiff "alleges that more than 25% of her work involves physical labor, and lists *specific tasks* as examples. These allegations are sufficient to conclude, for purposes of this motion [to dismiss], that [plaintiff] falls within NYLL's manual worker definition.") (citation omitted). Factual questions as to whether Plaintiff can proffer evidentiary support for her assertions pertaining to the manual worker classification are properly examined at a later stage. As a result, Defendant's motion to dismiss Plaintiff's NYLL frequency of payment claim is denied.

## IV.    NYLL Spread of Hours Claim

Defendant next seeks to dismiss Plaintiff's "spread of hours" claim under the NYLL, arguing that the "spread of hours" provision does not apply to her because she admits to earning more than the minimum wage rate during her entire employment with Defendant. Def. Br. at 10 (citing AC ¶ 31). New York awards "spread of hours pay" in addition to minimum and overtime wages, to an employee who works more than ten hours in one day and requires that any such employee must be paid an additional hour at the state minimum wage amount. *See* 12 N.Y. Comp. Code R. & Regs. § 142-2.4; *see also Rana v. Islam*, 887 F.3d 118, 123 n.3 (2d Cir. 2018).

The language of the regulation requires one additional hour's pay at the minimum wage "*in addition to the minimum wage* required by this Part[.]" N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.4 (emphasis added). While not explicit in the statutory text, courts in this Circuit have overwhelmingly followed a New York Department of Labor Opinion letter that limits the application of the Rule to employees who earn *only* the minimum wage. *See, e.g.*, *Almeida v. Aguinaga*, 500 F. Supp. 2d 366, 369 (S.D.N.Y. 2007) (collecting cases); *Zubair v. EnTech Eng'g P.C.*, 808 F. Supp. 2d 592, 601 (S.D.N.Y. 2011) (New York's spread of hours provision "is

properly limited to those employees who receive only the minimum compensation required by law."); *Espinosa v. Delgado Travel Agency, Inc.*, No. 05 Civ. 6917 (SAS), 2007 WL 656271, at *2 (S.D.N.Y. Mar. 2, 2007) ("By its plain language, section 142–2.4(a) only provides supplemental wages to workers who are paid the minimum wage required under New York law.  It does not ensure additional compensation to employees whose wages sufficiently exceed that floor."); *New York Taxi Workers All. v. Uber Techs., Inc.*, No. 16 Civ. 4098 (AKH), 2017 WL 10402924, at *1 (S.D.N.Y. Sept. 6, 2017) ("[T]he clear majority of courts in this Circuit have found that the NYLL's spread-of-hours provision does not affect workers whose total weekly compensation is already sufficiently above the minimum rate.") (internal quotations omitted); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 44 (E.D.N.Y. 2015) ("A limitation upon a plaintiff's eligibility to recover for spread-of-hours is that the plaintiff not earn more than the minimum wage."); *Chen v. Shanghai Cafe Deluxe, Inc.*, No. 16 Civ. 4790 (VF), 2023 WL 2401376, at *7 (S.D.N.Y. Mar. 8, 2023) (same); *but see Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 339–40 (S.D.N.Y. 2005).

The Court agrees with the vast majority of its sister courts in this Circuit.  The language of the Rule conveys that the additional hour's pay is a *supplement* to an employee earning only the minimum required rates, "not those employees whose pay is already *more than* the required rates plus the additional hour of minimum wage."  *Almeida*, 500 F. Supp. 2d at 369.  Accordingly, because Plaintiff affirmatively alleges that she was paid at a rate higher than minimum wage throughout her entire employment with Defendant, *see* AC ¶ 31, Plaintiff fails to state a "spread of hours" claim under NYLL, and her claim is dismissed.[6]

---

[6] Plaintiff argues that, even though she concededly received above minimum wage for her entire duration of employment, "[t]he records provided by Defendant reveal a NYLL minimum wage violation requiring payment of spread of hours under any standard."  Pl. Opp. at 3–4.  In so arguing, Plaintiff points to a single day contained in the Punch Records attached by Defendant to its motion to dismiss, which show that Plaintiff purportedly was *not paid*

## V.    NYLL Wage Statement and Notice Claims

Plaintiff also alleges that she was not given a wage notice and wage statement as required by the NYLL.  AC ¶¶ 70–71.  Plaintiff, however, fails to allege a concrete harm with respect to these recordkeeping claims, and she therefore lacks standing to assert these claims.  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) ("*TransUnion*").  Plaintiff's lack of standing to assert these claims deprives the Court of subject matter jurisdiction over them.  *See Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015).  Because this issue goes to the Court's authority to act, the Court raises the issue *sua sponte*. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).

Article III standing requires a plaintiff to show an injury-in-fact.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lacewell v. Office of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021) (quoting *Lujan*, 504 U.S. at 560).  Only plaintiffs who have been "concretely harmed by a defendant's statutory violation" have standing to sue the defendant in federal court.  *TransUnion*, 594 U.S. at 427.  In the wake of the Supreme Court's discussion of standing to assert statutory violations in *TransUnion*, courts throughout the Second Circuit have correctly come to a consensus that plaintiffs lack standing to assert such wage statement and notice violations under the NYLL

---

minimum wage on that day.  *Id*.  However, these Punch Records upon which Plaintiff attempts to save her "spread of hours" claim are the very same Punch Records that Plaintiff admonishes that Court are "not possible," "untrue," and may *not* be considered on a motion to dismiss.  *See* Pl. Opp. at 7 ("A simple review of the rounded, robotic times reveal that it is not possible these times are Plaintiff's actual clock-ins."); *id*. ("Ms. Brown's statement that these records reflect Plaintiff's actual clock-ins are untrue on their face . . . Given the robotic nature of the supposed punch-times, which frequently and unnaturally match Plaintiff's schedule to the minute[.]").  Plaintiff cannot have it both ways.  Notably, Plaintiff did not even assert a failure to pay minimum wage claim in her Original Complaint or Amended Complaint.  This Court has already found—in Plaintiff's favor—that the Punch Records may not be properly considered on this motion.  *See supra* Section I.

because they fail to allege "any concrete, downstream consequence of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 19 Civ. 7654, 2023 WL 2388728, at *8 (S.D.N.Y. 2023) (collecting cases); *see also Neor v. Acacia Network, Inc.*, No. 22 Civ. 4814, 2023 WL 1797267, at *4 (S.D.N.Y. 2023); *Sevilla v. House of Salads One LLC*, No. 20 Civ. 6072, 2022 WL 954740, at *7 (E.D.N.Y. 2022).

Specifically, in *TransUnion*, the Supreme Court instructed that "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." 594 U.S. at 427 (emphasis in original). "Vague allegations that Defendants' violations facilitated their *other* unlawful conduct do *not* give rise to a cognizable downstream consequence." *Chen*, 2023 WL 2388728, at *8 (emphasis added). In other words, Plaintiff must demonstrate how Defendant's "lack of notice resulted in an injury *greater than* Defendant['s] . . . [other wage] . . . violations." *Pastrana v. Mr. Taco LLC*, No. 18 Civ. 09374, 2022 WL 16857111, at *7 (S.D.N.Y. Sept. 23, 2022) (emphasis added), *report and recommendation adopted*, No. 18 Civ. 9374, 2022 WL 16857107 (S.D.N.Y. Nov. 10, 2022). "[A] *statutory violation alone*, without tangible injury or close *parallel to a traditional cause of action*, does not constitute an injury that can be recognized by the federal courts." *Francisco v. NY Tex Care, Inc.*, No. 19 Civ. 1649, 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022).

But that is precisely what Plaintiff attempts to do here in pleading a separate wage notice claim. Plaintiff argues that "Defendant would have been unable and unwilling to attempt underpayments had they complied with the law and accurately listed the actual hours of work for Plaintiff and Class members." AC ¶ 51; *see also* AC ¶ 47 ("By misinforming Plaintiff and employees of their hours of work, Defendant was able to hide its underpayments and the extent of the underpayments being made by Defendant."); *id.* ("The failure to [properly record keep] allows

Defendant to hide its wrongdoing . . . .").  In the wake of *TransUnion* and the prevailing consensus of courts in this Circuit, the Court rejects Plaintiff's argument.  The injury that Plaintiff allegedly suffered (*i.e.*, Defendant's failure to properly pay her) is simply not an injury she sustained because of a lack of the required notices and statements.  It is an injury sustained because her employer violated its obligation to pay overtime, an express requirement of federal and state law.  "It is the violation of *those* statutes to which [her] injury is 'fairly traceable.' "  *Quieju v. La Jugueria Inc.*, 23 Civ. 264 (BMC), 2023 WL 3073518, *2 (E.D.N.Y. Apr. 25, 2023).  Plaintiff plainly fails to allege any injuries that specifically arose, in and of themselves, from Defendant's purported failure to provide wage notices and statements.  And "[v]ague allegations that Defendant['s] violations facilitated their *other* unlawful conduct"—*i.e.*, Defendant's failure to provide wage statements may have allowed Defendant to hide its wrong-doing with respect to its overtime obligations— "do not give rise to a cognizable downstream consequence."  *Chen*, 2023 WL 2388728, at *8; *Pastrana*, 2022 WL 16857111, at *7 (concluding that plaintiffs were required to demonstrate how the "lack of notice resulted in an injury greater than" overtime violations), *report and recommendation adopted*, 2022 WL 16857107 (S.D.N.Y. Nov. 10, 2022).

Accordingly, Plaintiff's wage notice and statement claims under the NYLL are dismissed *sua sponte* for lack of Article III standing.

## VI.    Class Allegations

Finally, Defendant seeks to strike the class action allegations in the Amended Complaint. Def. Br. at 15.  Rule 12(f) states that a "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter," and Rule 23(d)(1) empowers courts to "require that . . . pleadings be amended to eliminate allegations about representation of absent persons." Fed. R. Civ. P. 12(f), 23(d)(1)(D).  However, "[c]ourts in this circuit hesitate to strike class

allegations before a class certification motion is filed." *Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 148 (S.D.N.Y. 2021); *see also Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012) (declining to consider striking class allegations until a motion for class certification).  Motions to strike class allegations are generally "viewed with disfavor and infrequently granted," *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003), because they "require[] a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification," *Blagman v. Apple Inc.*, No. 12 Civ. 5453, 2013 WL 2181709, at *2 (S.D.N.Y. May 20, 2013) (alterations omitted) (quoting *Calibuso v. Bank of Am. Corp.*, 893 F. Supp. 2d 374, 383 (E.D.N.Y. 2012)); *see also Haley v. Tchrs. Ins. & Annuity Assoc. of America*, 377 F. Supp. 3d 250, 272 (S.D.N.Y. 2019) (same).

As a result, "[d]istrict courts frequently have deferred the Rule 23 determination until the class certification stage, after the development of a 'more complete factual record.' " *Emilio v. Sprint Spectrum L.P.*, 68 F. Supp. 3d 509, 515 (S.D.N.Y. 2014) (quoting *Mazzola*, 849 F. Supp. 2d at 410)).  An exception to this general rule exists when the motion to strike "addresses issues 'separate and apart from the issues that will be decided on a class certification motion.' " *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (quoting *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06 Civ. 6198, 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008)).  Absent this exceptional circumstance, however, a motion to strike class allegations is generally "procedurally premature." *Id.*; *see also Haley.*, 377 F. Supp. 3d at 272.

First, Defendant argues that the class allegations should be stricken because "common questions of fact do not predominate over individual questions." Def. Br. at 16.  Defendant also

argues that the class allegations should be stricken because Plaintiff has "failed to identify any other class members" and thus "failed to plausibly allege that the class is numerous under Rule 23(a)(1)." Def. Br. at 20. Defendant's arguments undisputedly and expressly "rely upon the [Rule 23] factors that would be analyzed and addressed by this Court in the course of deciding a motion for class . . . certification."[7] *Campbell v. Chadbourne & Parke LLP*, No. 16 Civ. 6832, 2017 WL 2589389, at *4 (S.D.N.Y. June 14, 2017); *see also Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, No. 16 Civ. 5265, 2018 WL 1773142, at *2 (S.D.N.Y. Apr. 12, 2018). The question of whether to strike the class allegations requires a more developed record on the facts and law. Accordingly, Defendant's motion to strike the class action allegations is denied without prejudice to renewal at a later stage in this case.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part. The Clerk of the Court is respectfully requested to terminate docket entry 30.

**SO ORDERED.**

**Date:  September 17, 2024**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

---

[7] To certify a class, Rule 23(a) imposes "four threshold requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x. 760, 764 (2d Cir. 2020). In addition, the moving party must satisfy the "implied requirement of ascertainability." *Brecher v. Republic of Arg.*, 806 F.3d 22, 24 (2d Cir. 2015).